**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BARBARA SILVA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-23-CV-261-KC** |
| | § | |
| **SUNPATH, LTD and AFFORDABLE** | § | |
| **AUTO SHIELD,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion for Default Judgment ("Motion"),

ECF No. 55.  For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in

part.

## I.    BACKGROUND

This case involves alleged violations of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, and Section 302.101 of the Texas Business and Commerce Code

("TBCC").  Plaintiff, Barbara Silva, registered her personal cell phone number on the National

Do-Not-Call Registry on February 2, 2022.  Compl. ¶ 22, ECF No. 1.  Less than a year later, in

January 2023, Plaintiff began to receive telemarketing solicitation phone calls and text messages

to her cell phone.  *Id.* ¶¶ 23, 40 tbl. A.  The first phone call Plaintiff received was a prerecorded

message that stated the caller was "Kate from Auto Protection."  *Id.* ¶ 26.  The next day, Plaintiff

received a second phone call with the same prerecorded message.  *Id.* ¶ 27.  Plaintiff spoke with

a telemarketer and "purchased an auto protection policy to uncover the entity behind the

unsolicited phone calls."  *Id.*  Plaintiff cancelled the policy the next day but eventually received a

written policy that listed the "seller/dealer" as "Affordable Auto Shield," and the

"Administrator" as "SunPath LTD." *Id.* ¶¶ 29–31, 40 tbl. A.  Plaintiff alleges that Sunpath, LTD

is an "auto insurance company that sells car warranties and other financial products and services"

and that it authorized "its agent" Affordable Auto Shield to make the "unsolicited telemarketing

calls" to Plaintiff on its behalf.  *Id.* ¶¶ 20–21.

Plaintiff continued to receive telephone calls and, eventually, when called a fifth time,

requested that the telemarketers stop calling her.  *Id.* ¶ 34.  The telemarketers continued to call

her.  *Id.* ¶¶ 35–40, 40 tbl. A.  They also left her voicemails and sent her text messages.  *Id.*  In

total, Plaintiff received ten phone calls and three text messages.  *Id.* ¶ 40 tbl. A.  Plaintiff alleges

that she searched the Texas Secretary of State website and "did not find a valid Texas

Solicitation Registration" and that the calls/texts were made without "her prior express written

consent and not related to an emergency purpose."  *Id.* ¶¶ 23, 41.

Plaintiff filed her Complaint on July 13, 2023.  *See generally* Compl.  Waivers of service

of summons were executed by both Affordable Auto Shield and Sunpath, LTD ("Sunpath") on

November 16, 2023.  Waiver Service Returned Executed, ECF No. 8; Waiver Service Returned

Executed, ECF No. 9.  On July 17, 2024, the Court dismissed Plaintiff's claims against

Affordable Auto Shield.  July 17, 2024, Order, ECF No. 45; *see also* July 25, 2024, Order, ECF

No. 50.  Although Sunpath initially appeared in this matter, Mot. Dismiss, ECF No. 12, its

attorney-of-record withdrew from representing Sunpath shortly thereafter and it failed to retain

counsel as directed by the Court.  Jan. 12, 2024, Order, ECF No 14 (granting Motion to

Withdraw as Attorney and directing Sunpath to retain counsel and for counsel to enter an

appearance on the docket by February 8, 2024).  Accordingly, the Court directed Plaintiff to

move for clerk's entry of default and default judgment against Sunpath and struck Sunpath's

Motion to Dismiss.  *See generally* Mar. 18, 2024, Order, ECF No. 33; June 17, 2024, Order, ECF

No. 37; July 1, 2024, Order, ECF No. 40.  Plaintiff moved for Clerk's Entry of Default as to

Sunpath, Request Clerk's Entry Default, ECF No. 35, which was entered on April 10, 2024,

Clerk's Entry Default, ECF No 36.  This Motion followed on August 15, 2024.

## II.    DISCUSSION

### A.    Standard

The clerk of the court shall enter default when "a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After the clerk enters default, a party may move

for a default judgment.  *See* Fed. R. Civ. P. 55(b); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d

137, 141 (5th Cir. 1996).

Courts conduct a three-step analysis to determine whether default judgment should be

entered.  *See CoreStates Constr. Servs., Inc. v. Red Beard Excavators, LLC*, No. 1:22-cv-898-

RP, 2024 WL 1595696, at \*2 (W.D. Tex. Feb. 29, 2024) (citations omitted); *Alvarado Martinez

v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*,

161 F.3d 886, 893 (5th Cir. 1998)).  First, the court determines whether entry of default

judgment is procedurally warranted.  *Alvarado*, 444 F. Supp. 3d at 752 (citing *Lindsey*, 161 F.3d

at 893).  Second, the court assesses whether judgment is substantively warranted—that is,

"whether there is a sufficient basis in the pleadings for judgment."  *Id.* (citing *Nishimatsu Constr.

Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  In assessing whether the

complaint contains a sufficient basis for a default judgment, the court applies the standard

governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8.  *See Wooten v.

McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).  Rule 8 requires a pleading to

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2).  And third, the court decides what relief the plaintiff should

receive, if any.  *Alvarado*, 444 F. Supp. 3d at 752 (citing *Ins. Co. of the W. v. H&G Contractors,*

*Inc.*, No. 10-cv-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011)).

>    **B.**      **Analysis**

>         **1.**      **Default judgment is procedurally warranted.**

Courts focus on six factors when determining whether the entry of default judgment is

procedurally warranted.  *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.

Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Lindsey*, 161 F.3d at 893).  These factors include:

1) whether there are material issues of fact at issue; 2) whether there has been substantial

prejudice; 3) whether the grounds for default are clearly established; 4) whether the default was

caused by good faith mistake or excusable neglect; 5) the harshness of default judgment; 6)

whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

Each of these six factors support default judgment in this instance.  First, although

Sunpath filed an initial Rule 12 motion in response to Plaintiff's Complaint, the Court struck its

Motion to Dismiss after it subsequently failed to retain counsel to represent it in this matter.  *See*

June 17, 2024, Order 2–3.  There are therefore no material facts in dispute.  *See U.S. for Use of*

*M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default

judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding

damages."); *D'Arcy Petroleum, LLC v. Mink*, No. 19-cv-2770, 2021 WL 5218223, at *3 (N.D.

Tex. Oct. 6, 2021) (applying the reasoning of *Shipco* and *Nishimatsu* and taking all of the

plaintiff's allegations as true after striking the defendant's answer), *adopted*, 2021 WL 5213035

(Nov. 9, 2021).  Second, Sunpath's failure to appear in this matter following its Rule 12 motion

has caused substantial prejudice to Plaintiff's ability to prosecute her case and "bring[s] the adversary process to a halt." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at \*3 (citations omitted). Third, the grounds for default are clearly established for Sunpath due to its failure to appear in this matter since filing its initial response to Plaintiff's Complaint. Grounds for default judgment are established when a party is "totally unresponsive," even if they have previously appeared in a matter. *See Flying R Aviation, LLC v. Bondio, LLC*, No. 22-cv-1341, 2023 WL 4826217, at \*1–3 (N.D. Tex. July 26, 2023) (granting default judgment for plaintiff against defendant who had previously removed case to federal court and filed an answer but then subsequently "stopped participating" in the case) (citing and quoting *J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011)). Fourth, there is no evidence to suggest that Sunpath's silence is due to "good faith error or excusable error or neglect." *Lindsey*, 161 F.3d at 893. Fifth, default judgment is not overly harsh given that Plaintiff seeks only the relief to which she is entitled under the applicable statutes and Sunpath has failed to appear since filing its Motion to Dismiss despite the Court directing it to retain counsel. *See Holladay*, 2015 WL 5916440, at \*2 ("Plaintiff only seeks the relief to which she is entitled under the [relevant statute], mitigating the harshness of a default judgment against Defendants."); *Flying R Aviation*, 2023 WL 4826217, at \*3 (granting default when the defendant "failed to obtain legal counsel after an order from [the] Court"). Finally, no facts or evidence suggest that Sunpath would be able to demonstrate the good cause necessary for the Court to set aside default judgment.[1] *See Holladay*, 2015 WL 5916440, at \*2.

Thus, default judgment is procedurally warranted.

---

[1] However, this is not to predetermine any such request. Sunpath may file a motion to set aside default and vacate default judgment, and the Court will consider it in the ordinary course.

### 2.    Plaintiff's pleading provides a sufficient basis for default judgment as to some claims but not others.

#### a.    Sunpath's Vicarious Liability

Plaintiff alleges that the calls she received were made by Affordable Auto Shield at Sunpath's direction.  Compl. ¶¶ 20–21, 50–58.  Plaintiff states that Sunpath "directs, controls, authorizes, and pays Affordable [Auto Shield], to generate live-transfer leads for Sunpath's car warranties through direct telephone solicitation."  *Id.* ¶ 53.  Plaintiff further alleges that "Affordable [Auto Shield] was Sunpath's agent when it made the prohibited calls on behalf of and with the actual authority from Sunpath pursuant to a contract that governs Affordable[] [Auto Shield's] telemarketing for Sunpath."  *Id.* ¶ 52.

The Federal Communications Commission and various courts—including this one—have held that a principal can be held "vicariously liable under federal common law agency principles for a TCPA violation" by a third-party acting as their agent.  *In re Joint Pet. Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (finding "no cause to question" the FCC's decision in *Dish Network*); *Salaiz v. VSC Operations LLC*, No. 3:23-cv-423-KC, 2024 WL 3405601, at *2 (W.D. Tex. July 10, 2024) (conducting an agency analysis to determine whether defendant could be held liable for the actions of a third-party in violating the TCPA).  An entity may be vicariously liable "for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *Dish Network*, 28 FCC Rcd. at 6584.  Courts have also held that agency principles can similarly apply to related claims brought under Texas state law.  *VSC Operations*, 2024 WL 3405601, at *6 (collecting cases).  Under "federal common law principles of agency," the "conduct of the telemarketer who makes the calls [violative of the TCPA and Texas Business

and Commerce Code] can be imputed to the seller if the telemarketer is an agent of the seller."

*Guadian v. Progressive Debt Relief, LLC*, No. 3:23-cv-235-FM, 2023 WL 7393129, at *4 (W.D.

Tex. Nov. 8, 2023) (citing *Johnson v. Palmer Admin. Servs., Inc.*, No. 22-cv-121, 2022 WL

17546957, at *9 (E.D. Tex. Oct. 20, 2022)), *adopted*, 2023 WL 8242475 (Nov. 28, 2023).  The

requirements of traditional agency liability are control and authority.  *See VSC Operations*, 2024

WL 3405601, at *2–4.

### i.      Control

To establish the existence of an agency relationship, "the principal's right to control the

agent's actions" is "essential."  *Doane v. Benefytt Techs., Inc.*, No. 22-cv-10510, 2023 WL

2465628, at *8 (D. Mass. Mar. 10, 2023) (quoting Restatement (Third) of Agency § 1.01 cmt. f).

"The power to give interim instructions distinguishes principals in agency relationships from

those who contract to receive services provided by persons who are not agents."  *Id.* (quoting

Restatement (Third) of Agency § 1.01 cmt. f.).  Thus, "[f]or example, when a company wishes to

place an advertisement in a circular, the publisher of the circular does not become the agent of

the company."  *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020).

In the TCPA context, courts consider whether defendants "maintained control over the

content, timing, and recipients" of the calls or text messages sent by the telemarketer.  *Id.*; *see*

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 743 (N.D. Ill. 2014) (considering the extent to

which the defendant "had the right to, and did, control the manner and means of . . .

telemarketing").  For instance, the *Toney* court found a plausible agency relationship where the

defendant developed a script, required the telemarketer to use that script, directed the

telemarketer to provide a certain call-back number, and imposed guidelines for handling

customer information and obtaining customer acceptance of terms and conditions.  *Toney*, 75 F.

Supp. 3d at 743.  A court in this District has similarly allowed claims to proceed against a

defendant who allegedly gave the telemarketer "scripts and pricing information to use on [the]

calls." *Salaiz v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-cv-29-FM, 2022 WL 17813229,

at *2 (W.D. Tex. Nov. 10, 2022).

Plaintiff makes several allegations regarding Sunpath's exercise of control over

Affordable Auto Shield's actions in conducting its telemarketing efforts.  *See generally* Compl.

As in *Toney* and *Pelican Investment*, Plaintiff alleges that Sunpath "directs" and "controls"

Affordable Auto Shield's telemarketing efforts.  Compl. ¶ 53.  Specifically, Sunpath allegedly

"write[s] or at least approve[s] the prerecorded messages/call script Affordable [Auto Shield]

uses when qualifying leads for Sunpath." *Id.* ¶ 55.  Sunpath also "sets the criteria for qualifying

leads, which Affordable [Auto Shield] must follow," *id.* ¶ 54, and Affordable Auto Shield uses

these criteria when determining which customer leads to pursue, *id.* ¶ 58.  Critically, Plaintiff

alleges that Sunpath's control over Affordable Auto Shield is continuous, in that it provides not

only initial instructions but also continued direction during the course of Affordable Auto

Shield's telemarketing outreach on its behalf.  *See id.* ¶ 54 (Sunpath sets criteria for "qualifying

leads"); *id.* ¶ 57 (Sunpath exercises control over entire telemarketing activities of Affordable

Auto Shield).  While some of these allegations are very generalized, given the posture of this

case, the Court finds Plaintiff sufficiently alleges that Sunpath retained the power to control the

telemarketing activities that the telemarketers conducted on its behalf, sufficient to establish an

agency relationship.  *See Toney*, 75 F. Supp. 3d at 743.

### ii.    Authority

When an agency relationship is established, the principal may be held vicariously liable

for actions taken by its agents within the scope of their authority, or which the principal later

ratifies.  Restatement (Third) of Agency § 1.01 cmt. c.  "An agent acts with actual authority

when, at the time of taking action that has legal consequences for the principal, the agent

reasonably believes, in accordance with the principal's manifestations to the agent, that the

principal wishes the agent so to act."  *Id.* § 2.01.  Actual authority may be either expressly

conferred or implied by the principal's manifestations.  *Doane*, 2023 WL 2465628, at \*8 (citing

Restatement (Third) of Agency § 2.01 cmt. b).

The same allegations that plausibly establish that Sunpath retained the right to control

Affordable Auto Shield's activities also establish that Sunpath expressly authorized them to

conduct telemarketing activities on its behalf, by controlling and directing Affordable Auto

Shield's telemarketing outreach.  *See Toney*, 75 F. Supp. 3d at 743.  Plaintiff has therefore

adequately pleaded a basis for holding Sunpath vicariously liable for Affordable Auto Shield's

activities under a theory of actual authority.  Accordingly, the Court need not consider whether

Plaintiff has adequately pleaded a basis for vicarious liability against Sunpath under theories of

apparent authority or ratification.  *Cf. Henderson v. United Student Aid Funds, Inc.*, 918 F.3d

1068, 1076 (9th Cir. 2019) (declining to reach actual authority question by holding that TCPA

defendant could be held liable for telemarketer's actions under a ratification theory).

Thus, Sunpath can be held vicariously liable for the alleged calls and text messages.

          **b.**       **Plaintiff's TCPA Claims**

                **i.**       **Section 227(b) Violations**

Turning to the substance of Plaintiff's claims, Plaintiff first alleges that two of the phone

calls placed by Affordable Auto Shield on Sunpath's behalf violated § 227(b) of the TCPA.  *See*

Compl. ¶¶ 63–67; [2] Mot. 8–9, 11.  Section 227(b) prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice" to any phone number assigned to a "cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  Section 227(b) creates a private right of action, allowing individuals to bring suit for violations of the subsection.  *Id.* § 227(b)(3).

Plaintiff's Complaint alleges that she did not consent to Affordable Auto Shield's phone calls and that the calls were "not related to an emergency purpose."  Compl. ¶ 23.  Plaintiff alleges that the first two calls she received from Affordable Auto Shield began with the same prerecorded message.  *Id.* ¶¶ 26–27.  These allegations are sufficient to establish liability for Sunpath under the "artificial or prerecorded voice" provisions of the TCPA, without the need for Plaintiff to demonstrate the use of an ATDS.  *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must . . . play."); *Gardner v. Navient, LLC*, No. 24-cv-198, 2024 WL 3363016, at *4 (N.D. Tex. June 7, 2024) ("[T]he use of an ATDS employing a random or sequential number generator is not required where a plaintiff alleges that an artificial or prerecorded voice played."), *adopted*, 2024 WL 3362475 (July 9, 2024).  Thus, Plaintiff has adequately alleged that two calls placed by Affordable Auto Shield on Sunpath's behalf violated § 227(b).

---

[2] The numbering for Plaintiff's Complaint for the paragraphs after paragraph 62 appears to be wrong. Accordingly, for ease of reference, the Court describes the paragraphs numbered as paragraphs 1–14 in the Complaint at pages 12–14 as paragraphs 63–76.

ii.      Section 227(c) and 47 C.F.R. § 64.1200 Violations

Next, Plaintiff claims that twelve calls[3] violated Federal Communications Commission

("FCC") regulations contained at 47 C.F.R. § 64.1200(c) and promulgated pursuant to

§ 227(c)(3)(F) of the TCPA.[4]  *See* Mot. 9–11; Compl. ¶¶ 23, 40 tbl. A, 68–73.  As relevant here,

these regulations state that "[n]o person or entity shall initiate any telephone solicitation to" "[a]

residential telephone subscriber who has registered his or her telephone number on the national

do-not-call registry."  47 C.F.R. § 64.1200(c)(2).  An individual or entity that violates this

regulatory provision is not liable if they are able to demonstrate that they: 1) committed the

violation inadvertently; 2) have implemented written procedures and training of personnel to

ensure compliance with the do-not-call registry; 3) maintain records of telephone numbers it may

not call; and 4) use a process to check phone numbers against the do-not-call registry a minimum

of every thirty-one days.  *Id.* § 64.1200(c)(2)(i)(A)–(D).  Section 227(c) of the TCPA creates a

private right of action that allows individuals who receive calls made in violation of the FCC

regulations to sue for damages if they receive "more than one telephone call within any 12-

month period by or on behalf of the same entity."  47 U.S.C. § 227(c)(5).

A cell phone can constitute a residential telephone, and thus fall under the FCC

regulations, if a plaintiff "sufficiently allege[s] that [they] use [their] cell phone for residential

---

[3] Plaintiff alleges that she received "at least twelve (12) calls to her cell phone."  Compl. ¶ 23.  But the table she includes in her Complaint lists a total of ten phone calls and three text messages received from Affordable Auto Shield.  *Id.* ¶ 40 tbl. A.  Plaintiff seeks recovery only for twelve alleged violations under § 227(c) in her Motion, Mot. 11, and the Court therefore considers only whether Plaintiff has sufficiently alleged that twelve of these calls and text messages violated the TCPA, not thirteen.

[4] Plaintiff, in her Motion, also references "47 U.S.C. § 227(d)(6)" in connection with this claim.  Mot. 9.  But this provision of the TCPA does not appear to exist and Plaintiff offers no indication of which provision of the TCPA she may be intending to refer to.  Moreover, no claims other than those analyzed in this Order appear in Plaintiff's Complaint.  *See generally* Compl.  Thus, the Court considers Plaintiff's "§ 227(d)(6)" claim no further.

purposes." *See, e.g.*, *Salaiz v. VSC Operations LLC*, No. 3:23-cv-423-KC, 2024 WL 3405601, at

*5 (W.D. Tex. July 10, 2024).  Courts consider factors such as the extent to which the plaintiff

uses the cell phone for "'personal, family, and household' purposes." *Id.* (cell phone was

residential phone when plaintiff alleged they used their phone to communicate with friends and

family and for "navigation purposes, sending and receiving emails, timing food when cooking,

and sending and receiving text messages").

Plaintiff alleges that Affordable Auto Shield made telemarketing calls on behalf of

Sunpath to "Plaintiff's residential telephone."  Compl. ¶ 69.  But beyond this conclusory

statement, Plaintiff otherwise does not make any allegations regarding the ways or purposes for

which she uses her phone.  *See generally* Compl.  Pro se pleadings are held to "less stringent

standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520

(1972); *see also Doe v. Bonath*, 705 F. Supp. 3d 690, 707 (W.D. Tex. 2023) (citing *Taylor v.*

*Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).  Even so, "conclusory allegations or

legal conclusions masquerading as factual conclusions will not suffice."  *Fernandez-Montes v.*

*Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Because Plaintiff does not make any

allegations of fact that would support the Court finding that her cell phone constitutes a

residential telephone under FCC regulations, she cannot recover for the alleged violations of

§ 227(c).  The Motion is thus denied as to Plaintiff's request for default judgment against

Sunpath for her do-not-call claims.

### c.    Plaintiff's TBCC Claims

Plaintiff also asserts claims under Section 302.101 of the TBCC.  Mot. 9–10; Am.

Compl. ¶¶ 74–76.  This provision of Texas law provides that a "seller may not make a telephone

solicitation from a location in this state or to a purchaser located in this state unless the seller

holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a). Courts have interpreted other provisions of the TBCC as creating a private right of action for violations of the TBCC's registration certificate requirement. *See, e.g.*, *Cacho v. Live Transfers, Inc.*, No. 3:23-cv-372-DCG, 2024 WL 3103324, at *5 (W.D. Tex. June 24, 2024) (holding that "[t]here is a private right of action available to enforce § 302.101," and then citing Section 302.303(b) of the Texas Business and Commerce Code), *adopted*, 2024 WL 3595780 (July 30, 2024); *Barack v. Bankroll Cap., Inc.*, No. 23-cv-615, 2024 WL 3015327, at *4 (N.D. Tex. May 30, 2024) ("Section 302.302 of the TBCC provides a private cause of action to enforce the provisions of Chapter 302, for 'a civil penalty of not more than $5,000 for each violation.'" (citing Section 302.302 of the Texas Business and Commerce Code)) *adopted*, 2024 WL 3015317 (June 14, 2024); *Auguston v. Nat'l Admin. Serv. Co., LLC*, No. 21-cv-819, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023) ("While Texas Business and Commerce Code Section 302.101 itself does not provide a private right of action, Section 302.303 provides the plaintiff a private right of action to enforce violations of Section 302.101."), *adopted*, 2023 WL 1802389 (Feb. 7, 2023).

As under § 227(c)(5) of the TCPA, Plaintiff seeks damages for twelve violations of Section 302.101 of the TBCC, though she alleges that she received ten phone calls and three text messages in total. Mot. 11; Compl. ¶ 40 Tbl. A. Plaintiff alleges that she is a Texas resident and was "present in Texas for all calls." Compl. ¶ 3. Plaintiff alleges that the ten telephone calls made by Affordable Auto Shield were made with the purpose of "soliciting 'Auto Protection' products." *Id.* ¶ 23. Plaintiff also alleges that she "searched the Texas Secretary of State website . . . and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101." *Id.* ¶ 41. Plaintiff therefore sufficiently alleges ten violations of

Section 302.101 of the TBCC for the ten telephone calls she received from Affordable Auto

Shield on behalf of Sunpath.  *See, e.g.*, *Live Transfers*, 2024 WL 3103324, at \*5 (holding that

plaintiff sufficiently alleged that defendant violated TBCC's registration certificate requirement

when plaintiff alleged in his complaint that he was a resident of Texas and that the defendant was

not registered with the Texas Secretary of State).

But Plaintiff does not adequately allege that the text messages she received from

Affordable Auto Shield violated the TBCC.  Although text messages constitute a "call" under the

TCPA, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *revised* (Feb. 9, 2016) (citing

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014)), this does not appear to be the

case under Section 302.101 of the TBCC.  To be sure, there are instances where courts—

including in this District—have awarded plaintiffs damages for marketing solicitations in the

form of text messages under this section of the TBCC.  *See*, *e.g.*, *Busbee v. ServiceToday!*, No.

24-cv-364, 2024 WL 4428989, at \*5 (N.D. Tex. Oct. 4, 2024) (awarding plaintiff $35,000 for

seven text messages sent in violation of Section 302.101 of the TBCC); *Thomas v. Zenith Solar,*

*LLC*, No. 7:22-cv-47-DC-RCG, 2022 WL 17813168, at \*1, 4 (W.D. Tex. Aug. 1, 2022)

(awarding plaintiff $10,000 for two text messages sent in violation of Section 302.101 of the

TBCC).  But those courts did not consider in any depth whether it was appropriate to do so.

*Busbee*, 2024 WL 4428989, at \*4; *Zenith Solar*, 2022 WL 17813168, at \*4.

And many courts have held that text messages do not constitute a "telephone solicitation"

under Section 302.101 of the TBCC.  *See, e.g.*, *Powers v. One Techs., LLC*, No. 21-cv-2091,

2022 WL 2992881, at \*3 (N.D. Tex. July 28, 2022) (holding that text messages do not constitute

a call under Section 302.101 of the TBCC based on a plain reading of the statute and an analysis

of legislative amendments of Chapter 304 of the TBCC); *Horton v. MultiPlan Inc.*, No. 23-cv-

2098, 2024 WL 3380236, at *9 (N.D. Tex. June 7, 2024) (rejecting plaintiff's claim for damages

for text messages allegedly sent in violation of Section 302.101 the TBCC based on a "plain

reading of the Texas Business and Commerce Code" and *Powers*), *adopted*, 2024 WL 3378719

(July 11, 2024); *Guadian v. United Tax Def. LLC*, No. 3:23-cv-349-KC, 2024 WL 140249, at *7

n.4 (W.D. Tex. Jan. 12, 2024) (citing *Powers* and holding that "Section 302.101 does not apply

to text messages").  Plaintiff does not advance any arguments as to why text messages should

constitute a call under Section 302.101 of the TBCC, and the Court finds *Powers* and its progeny

well-reasoned and persuasive.  Accordingly, Plaintiff cannot recover for the three text messages

Plaintiff alleges Affordable Auto Shield sent to her on Sunpath's behalf.

The Motion is thus granted as to Plaintiff's request for default judgment for violations of

Section 302.101 of the TBCC as to the ten phone calls placed by Affordable Auto Shield on

Sunpath's behalf and denied as to the three text messages.

### 3.  Damages

Plaintiff seeks a total of $67,000.00 in damages for Sunpath's violations of the TCPA and

TBCC.  Mot. 11.  A plaintiff seeking damages under §§ 227(b) and 227(c) of the TCPA may

recover their actual monetary loss or statutory damages of $500.00 per violation.  47 U.S.C.

§ 227(b)(3)(B); *id.* § 227(c)(5)(B).  Additionally, if the "court finds that the defendant willfully

or knowingly violated" the TCPA or associated regulations, the court "may, in its discretion,

increase the amount of the award to an amount equal to not more than [three] times [the amount

of statutory damages]."  *Id.* § 227(b)(3)(C).  The applicable provision of the TBCC provides for

a "civil penalty of not more than $5,000 for each violation."  Tex. Bus. & Com. Code

§ 302.302(a).  Here, Plaintiff seeks to recover minimum statutory damages for Sunpath's

violations of the TCPA, as well as the maximum civil penalty under the TBCC.  Mot. 10–11,

Am. Compl. ¶¶74–83.

Although a plaintiff's pleading can provide a sufficient basis for a court to enter default

judgment as to liability, this is often not the case for damages.  *See Shipco*, 814 F.2d at 1014;

*United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  Instead, damages must

generally be proven by the submission of evidence, such as an affidavit, or through an

evidentiary hearing.  *See Freeman*, 605 F.2d at 857.  District courts have "wide latitude"

regarding whether to hold an evidentiary hearing on the issue of damages.  *James v. Frame*, 6

F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 55(b)(2)(B).

A hearing is unnecessary if "the amount claimed is a liquidated sum or one capable of

mathematical calculation," *Freeman*, 605 F.2d at 857, and courts can instead determine damages

based on "pleadings or information in the existing record."  Daniel R. Coquillette et al., *Moore's*

*Federal Practice* § 55.32[2][a], 55-50 (3d. 2024).  Where a plaintiff seeks only the minimum

statutory damages available, courts routinely make such awards based solely on review of the

pleadings and without any evidence or a hearing.  *Id.*; *see, e.g.*, *Live Transfers*, 2024 WL

3103324, at *5 (awarding minimum statutory damages based on allegations contained in

amended complaint regarding number of times plaintiff was called by defendant); *Hunsinger v.*

*204S6TH LLC*, No. 21-cv-2847, 2022 WL 1110354, at *9 (N.D. Tex. Mar. 23, 2022) (citations

omitted) ("Courts that have similarly awarded default judgments for TCPA claims have

determined the number of phone calls based upon the allegations in the complaint *or* upon

additional evidence . . . ." (emphasis added)), *adopted*, 2022 WL 1102864 (N.D. Tex. Apr. 13,

2022); *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544

(E.D. Pa. 2008) ("In default judgment cases, courts can order the minimum statutory damages without conducting a hearing.").

To be sure, the caselaw regarding the award of statutory damages at default judgment based solely on the pleadings is unclear, and courts often appear to conflate the need for an evidentiary hearing with the need for submission of at least some written evidence. *See, e.g.*, *Walker v. Koelzer*, 715 F. Supp. 3d 956, 966 (N.D. Tex. 2024) ("Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." (citing *Freeman*, 605 F.2d at 857)); *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 239 (M.D. La. 2022) ("A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated 'by detailed affidavits establishing the necessary facts.'").  But common sense supports the view that courts can award minimum statutory damages based solely on a review of a plaintiff's pleading. Because they act as a floor to the amount of recoverable damages, a plaintiff is automatically entitled to minimum statutory damages if they can demonstrate a defendant's liability under the relevant statute.  As discussed above, to assess liability at default judgment, courts accept the plaintiff's well-pleaded allegations as true.  It would thus be incongruent to require a plaintiff to submit additional evidence to support an award of minimum statutory damages, but not for liability, when those damages flow automatically from liability.  *Cf. James*, 6 F.3d at 311. (holding that an evidentiary hearing was "superfluous" when "it would have revealed no pertinent information").

### a.   TCPA Damages

Plaintiff seeks damages under both §§ 227(b) and 227(c) of the TCPA.  Mot. 10–11.

Because she has not adequately alleged violations of § 227(c), Plaintiff can only recover under

§ 227(b) of the TCPA.

### i.   Section 227(b) Violations

Plaintiff seeks a total of $1,000.00 in damages under § 227(b) of the TCPA for two

violations at $500.00 per call.  Mot. 10–11.  Plaintiff seeks only the minimum statutory damages

to which she is entitled under § 227(b) of the TCPA, and the Court can therefore award damages

based solely on review of her pleading.  Accordingly, because Plaintiff has sufficiently alleged

that Defendants called her and violated § 227(b) of the TCPA two times, the Court awards her a

total of $1,000.00 pursuant to 47 U.S.C. § 227(b)(3)(B).

### b.   Damages for Violations of the TBCC

Plaintiff seeks a total of $60,000.00 in damages for twelve violations of Section 302.101

of the Texas Business and Commerce Code.  Mot. 11.  As discussed earlier, Plaintiff has only

adequately alleged ten violations of the TBCC.

In determining how much to award a plaintiff under this provision of the TBCC, courts in

this District—including this one—have routinely awarded plaintiffs the full amount of $5,000.00

for each violation under the TBCC.  *See, e.g.*, *Live Transfers*, 2024 WL 3595780, at *2–3, 4

(adopting magistrate judge's report and recommendation awarding plaintiff $5,000.00 per

violation of the TBCC); *Callier v. Tip Top Cap. Inc.*, No. 3:23-cv-437-KC, 2024 WL 1637535,

at *4 (W.D. Tex. Apr. 16, 2024) (adopting magistrate judge's report and recommendation in part

to award plaintiff $5,000.00 per violation of the TBCC); *Thomas v. Zenith Solar, LLC*, No. 7:22-

cv-47-DC-RCG, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022) (making recommendation

of award of $5,000.00 per violation of the TBCC).  Absent argument or authority to the contrary, the Court sees no reason to deviate from this approach here.

Accordingly, because Plaintiff has sufficiently alleged that Defendants called her and violated Section 302.101 of the Texas Business and Commerce Code ten times, the Court awards her a total of $50,000.00 pursuant to Section 302.302 of the Texas Business and Commerce Code.

<strong>c.        Costs</strong>

Finally, Plaintiff seeks $402.00 in "filing fees."  Mot. 11.  The federal statute governing generally recoverable costs for litigants in federal court is 28 U.S.C. § 1920.  This statute provides that recoverable costs include, among others, "[f]ees of the clerk and marshal."  *Id.* Plaintiff can therefore recover for filing fees, 28 U.S.C. § 1920, and the Court takes judicial notice of the $402.00 filing fee paid by Plaintiff, Filing Fee Received, ECF No. 1.

Accordingly, the Court awards Plaintiff $402.00 in costs.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion, ECF No. 55, is **GRANTED** in part and **DENIED** in part.  The Motion is **DENIED** as to Plaintiff's request for default judgment for violations of 47 U.S.C. § 227(c) and for two violations of Section 302.101 of the Texas Business and Commerce Code.  The Motion is otherwise **GRANTED**.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Barbara Silva, and against Defendant Sunpath, LTD.  Defendant Sunpath, LTD **SHALL PAY** Plaintiff:

a. $1,000.00 in statutory damages for two violations of 47 U.S.C. § 227(b) pursuant to § 227(b)(3)(B);

c. $50,000.00 in statutory damages for ten violations of Section 302.101 of the Texas

Business and Commerce Code pursuant to Section 302.302 of the Texas Business and

Commerce Code; and

d. $402.00 in costs of court.

In total, the Court **GRANTS** default judgment in favor of Plaintiff and against Defendant

Sunpath, LTD in the amount of $51,402.00.

**IT IS FURTHER ORDERED** that all monetary judgments awarded herein shall accrue

post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from the date

of this Order.

The Clerk shall close the case.

**SO ORDERED.**

SIGNED this 7th day of November, 2024.


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

20